In re the MARRIAGE OF Frank A. JIRIK and Gail D. Jirik.

Frank A. JIRIK, Appellant,

v.

Gail D. JIRIK, Respondent.

No. 16097.

Missouri Court of Appeals, Southern District, Division One.

Jan. 24, 1990.

Carr L. Woods, Garrett & Woods, Monett, for appellant.

Susan Appelquist, Springfield, for respondent.

CROW, Presiding Judge.

Frank A. Jirik ("Frank") appeals from a decree dissolving his marriage to Gail D. Jirik ("Gail"). They married July 25, 1956, when Frank was 24 and Gail 18.

The dissolution action was tried before the presiding judge of Judicial Circuit 39 on June 29, 1987. On January 26, 1988, the judge filed a comprehensive memorandum opinion containing findings of fact and conclusions of law on the multitudinous issues raised at trial. A decree of dissolution of marriage based on those findings and conclusions was entered February 3, 1988.

Frank, through a different lawyer than the one who had represented him at trial, filed a timely motion for new trial. The judge granted the motion as to certain issues and denied it as to others.

Frank then applied for, and was granted, a change of judge. A new judge was assigned. Gail thereupon applied for, and was granted, a change from that judge. The Honorable C. K. Higgins, Jr., was assigned to the cause. No issue is raised in this appeal regarding the changes of judge.

A trial was conducted by Judge Higgins on the unresolved issues November 8, 1988. At the conclusion Judge Higgins dictated

into the record his findings and decisions on those issues. A decree in accordance therewith was entered December 15, 1988. That decree, as we comprehend it, provides, among other things, that the parties' real estate, livestock, farm machinery and equipment shall be sold, that after payment of the expenses of sale the proceeds shall be applied to certain secured and unsecured indebtedness of the parties, that Gail shall receive the next $10,000 of the proceeds, and that the remaining proceeds shall be divided equally between Frank and Gail.

Frank brings this appeal, maintaining the trial court erred in (1) awarding maintenance to Gail, (2) finding that a 40–acre tract of real estate and certain cattle and equipment were marital property, (3) finding that a 120–acre tract of real estate and certain cattle were marital property, and (4) awarding Gail the first $10,000 of the sale proceeds after payment of the sale expenses and joint debts.

Regarding maintenance we note that on December 12, 1986, two months after Frank commenced the dissolution action, Gail was awarded temporary maintenance of $200 per month. § 452.315, RSMo 1986. The decree of February 3, 1988, awarded Gail maintenance of $150 per month until she attained age 62. That provision was set aside when the motion for new trial was granted in part (April 26, 1988).

The decree of December 15, 1988, awarded Gail $200 per month "temporary maintenance ... until such time as this judgment becomes final." The decree continued: "At the time this judgment becomes final, the Court orders that [Frank] pay to [Gail] periodic maintenance in the sum of $150.00 per month.... At the time the marital property is sold and [Gail] receives her share of the distribution of the proceeds, maintenance shall automatically reduce to the sum of $50.00 per month." The decree further provided that when Gail reaches age 62 her right to receive maintenance "shall terminate absolutely."

■ One of Frank's complaints about maintenance is that the award of $200 per month temporary maintenance in the decree of December 15, 1988, was erroneous in that it "would not be of a temporary nature but would be a final order of maintenance."

We are unsure what the trial court intended in providing that the $200–per–month temporary maintenance would remain in effect "until such time as this judgment becomes final." The trial court could have meant (a) until the judgment became final for purpose of appeal, or (b) until the deadline for filing notice of appeal passed without an appeal being taken, or (c) until the mandate of an appellate court was issued. It is also possible the trial court merely wanted a provision in the decree confirming that the December 12, 1986, award of $200 per month temporary maintenance remained in effect from that date until entry of the December 15, 1988, decree, and that upon entry of that decree the $150–per–month maintenance replaced the $200–per–month temporary maintenance.

*Hansen v. Hansen,* 734 S.W.2d 287, 288[1] (Mo.App.1987), held that a temporary award under § 452.315 in an action for dissolution of marriage was terminated upon entry of the dissolution decree. In *Tzinberg v. Tzinberg,* 631 S.W.2d 681, 683 (Mo.App.1982), the court said temporary awards are intended to maintain the status quo pending final judgment.

A broader view was taken in *Goller v. Goller,* 758 S.W.2d 505 (Mo.App.1988). In that dissolution action the trial court ordered the husband to pay the wife a specified amount of temporary maintenance each month. Upon entry of the dissolution decree the trial court terminated the temporary order. The decree contained no maintenance award. On appeal the wife complained that the trial court erred in terminating the temporary order pending appeal. The Western District of this Court held that the trial court had jurisdiction to entertain a motion for temporary maintenance pending appeal, that the evidence heard by the trial court prior to entry of the decree demonstrated the wife was entitled to temporary maintenance pending final disposition of the appeal, and that the trial court erred in terminating the tempo-

rary maintenance upon entry of the decree. *Id.* at 509–10[8 to 10].

The instant case differs from *Goller* in that the decree of December 15, 1988, did not cut off all maintenance for Gail at the time of its entry. It specifically provided for monthly maintenance until Gail reaches age 62.[1] As the provision regarding the duration of the temporary maintenance is ambiguous, we shall exercise our power under Rule 84.14[2] by striking from the decree of December 15, 1988, the provision that the temporary maintenance of $200 per month shall remain in effect until such time as the judgment becomes final.

As observed earlier, an order for temporary maintenance of $200 per month was entered December 12, 1986. The order provided that the first payment was due that date. The order remained undisturbed throughout the pendency of the case in the circuit court. Consequently, from December 12, 1986, until entry of the decree of December 15, 1988, a $200 installment of temporary maintenance has become due from Frank to Gail on the twelfth day of each and every month up to and including December 12, 1988, three days before entry of the decree.

To facilitate computation of the total amount of temporary maintenance due from Frank to Gail[3] we modify the decree of December 15, 1988, so it shall provide that the due date of the first payment of the $150–per–month maintenance is January 12, 1989, one month after the final installment of the $200–per–month temporary maintenance became due.

■ Frank maintains the trial court should not have awarded Gail any maintenance. Frank avers he is disabled and financially unable to pay maintenance, and that the trial court failed to consider certain factors required by § 452.335, RSMo Supp.1988.

The standard of appellate review in this court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Kessler v. Kessler*, 719 S.W.2d 138, 139 (Mo.App.1986). An appellant challenging a maintenance award has the burden of showing that the award was so excessive that it constituted an abuse of the trial court's discretion. *Kessler*, 719 S.W.2d at 140[2]; *Salcedo v. Salcedo*, 693 S.W.2d 875, 878[5] (Mo.App.1985); *Bull v. Bull*, 634 S.W.2d 228, 229[5] (Mo.App.1982).

In reviewing the maintenance award we note that once Gail receives her share of the sale proceeds[4] Frank's maintenance obligation drops to $50 per month, a modest sum in today's economy and only one-third of the amount he was ordered to pay in the original decree.

We have studiously reviewed the transcripts of both trials, aggregating 387 pages, and have determined that the maintenance award, as we have modified it in regard to the termination of the $200–per–month temporary maintenance and the commencement of the $150–per–month maintenance, is supported by substantial evidence and is not against the weight of the evidence, and that no error of law appears with respect to it. We have further determined that an opinion synopsizing the evidence pertinent to the mainte-

1. The trial court evidently assumed Gail would begin drawing Social Security benefits upon reaching age 62, hence she would no longer need maintenance. Gail has not appealed and Frank makes no complaint about the provision automatically reducing maintenance to $50 per month when Gail receives her share of the sale proceeds or the provision automatically terminating maintenance when Gail reaches age 62.

2. Rule references are to Missouri Rules of Civil Procedure (20th ed.1989).

3. Frank admitted in his testimony that he had paid no temporary maintenance voluntarily and that the only sum collected by Gail was obtained by garnishment.

4. The legal file, as supplemented, demonstrates that the court-ordered sale was carried out and Frank purchased all the parties' real estate, paying ten per cent of the price at time of sale. At oral argument we were informed that Frank, though in possession of the real estate, has not yet paid the balance of the purchase price.

nance issue would have no precedential value. Accordingly, the maintenance award in the decree of December 15, 1988, as heretofore modified, is affirmed in compliance with Rule 84.16(b).

■ We have reached the same conclusions regarding disposition of Frank's complaints about the trial court's determination that the 40–acre tract, the 120–acre tract, and certain cattle and equipment were marital property. The evidence on those issues was in conflict. Determining the credibility of the witnesses was for the trial court, *Roth v. Roth*, 760 S.W.2d 616, 618 (Mo.App. 1988), which was free to believe all, part or none of the testimony of any witness. *Preston v. Preston*, 767 S.W.2d 618, 620 (Mo.App.1989).

The trial court's findings regarding the property mentioned in the preceding paragraph are supported by substantial evidence, are not against the weight of the evidence, and no error of law appears regarding them. An opinion synopsizing the evidence pertinent to such findings would have no precedential value. Accordingly, the provisions of the decree treating such property as marital property are affirmed in compliance with Rule 84.16(b).

■ Frank's final assignment of error reads:

"The trial court erred in apportioning the sum of $10,000.00 to [Gail] over and above [her] share of the net proceeds of the sale of the marital properties for the reason that the basis for the court's award was in error as this apportionment was based upon gross proceeds received by [Frank] as the court erred in not providing for credit to [Frank] for expenses incurred by [him] for the care and maintenance of the livestock during the pendency of this cause and the failure of the court to so consider was highly prejudicial to [Frank] since [he] expended large sums of money for feed, care, and maintenance of said livestock."

In considering this point we take note that the decree contains the following provision:

"[A]ny amount [Gail] receives as and for payments of temporary maintenance of $200.00 per month shall be deducted from the $10,000.00 she is apportioned from the net proceeds of sale of marital property."

Commencing December 12, 1986, 25 installments of temporary maintenance of $200 per month accrued in favor of Gail through December 12, 1988, the date the final installment of temporary maintenance became due. Those installments total $5,000, exclusive of interest.

It is thus apparent that the award to Gail of the first $10,000 of the sale proceeds, after payment of the sale expenses and joint debts, is illusory, as Frank will receive a credit against that sum for all temporary maintenance collected by Gail.[5]

Frank asserts his evidence showed that the "total farm income" received by him from October 2, 1986, through the date of the second trial, November 8, 1988, was $26,410, and that the "farm expenses" for that period were $20,483. Frank argues the trial court gave no consideration to this evidence and arbitrarily granted Gail the $10,000 "over and above her one-half" of the sale proceeds. That, says Frank, was an abuse of discretion.

After the parties separated September 25, 1986, Frank continued to reside in the marital home on the parties' farm. One of the parties' three adult offspring, Anthony Jirik, resides in a mobile home on the farm with his wife and their son. They have lived there since 1983. Gail contends many of the "farm expenses" claimed by Frank are in fact personal living expenses for him and the Anthony Jirik household.

The evidence supports that inference. For example, Frank's list of "farm expenses" includes regular expenditures for telephone service and electricity. There are also three purchases of propane aggregating $362.50.

While it is arguable that a telephone, electricity and propane are necessary to

---

**5.** We are not called upon to decide whether the trial court erred in providing for the credit, as Gail has not appealed and Frank does not attack the provision allowing the credit.

operate a farm, it is inferable that at least a portion of those expenses were attributable to personal use.

As noted earlier, credibility of the witnesses was for the trial court, which was not obliged to believe Frank's evidence regarding the farm income and expenses after the separation.

The statute governing division of marital property in dissolution actions, § 452.330, RSMo Supp.1988, requires a fair and equitable division of the marital property in light of the circumstances attending each individual case; it does not require an equal division of the property. *Dardick v. Dardick*, 670 S.W.2d 865, 869[4] (Mo. banc 1984). A trial court is vested with considerable consideration in dividing marital property, and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.* at 869[5].

We hold that the division of marital property in the instant case is not so heavily and unduly weighted in favor of Gail as to amount to an abuse of discretion. We further hold that the division of marital property is supported by substantial evidence and is not against the weight of the evidence, that in dividing the marital property the trial court neither erroneously declared nor erroneously applied the law, and that an opinion synopsizing the evidence pertinent to division of the marital property would have no precedential value. The provisions of the decree dividing the marital property are therefore affirmed in compliance with Rule 84.16(b). Frank's final assignment of error is denied.

The decree of dissolution of marriage entered December 15, 1988, as modified by this opinion in regard to the termination of the $200–per–month temporary maintenance and the commencement of the $150–per–month maintenance, is affirmed.

GREENE and PREWITT, JJ., concur.